(No. 2228. Dec. 30, 1918.)
STATE v. FAGGARD.

SYLLABUS BY THE COURT.

1. A crime must be prosecuted in the jurisdiction where it is committed, and a prosecution for criminal false pretenses must be had in the county, district, or state where the offense was consummated by the obtaining of the property, even though the inducing pretenses were made elsewhere, and the consummation by delivery of the property was effected through the instrumentality of an innocent agent, without the personal presence of the principal.              P. 79

2. An indictment for securing money by false pretense is fatally defective, where it is alleged that the means employed were certain bogus bills of sale and a mortgage attached to a draft drawn on the defrauded party, but which fails to show that said draft was ever honored by such party, and money paid by such party on the faith of such representation.
                                                                                          P. 79

3. An indictment for obtaining property or money by false pretense must allege, directly and distinctly, the ownership of the property obtained.                                           P. 80

Appeal from District Court, Eddy County; Richardson, Judge.

William Faggard was indicted for obtaining money by false pretenses.    Demurrer to the indictment was sustained, and the State appeals.    Affirmed.

H. L. PATTON, Att. Gen. and C. A. HATCH, Asst. Atty. Gen., for the State.

JAMES A. HALL, of Portales, O. O. ASKREN, of Santa
Fe, and S. D. STENNIS, JR., of Carlsbad, for appellee.

OPINION OF THE COURT.

ROBERTS, J.  Appellee was indicted in the district
court of Eddy county for obtaining money by false pre-
tenses under section 1551, Code 1915. The court sustained
a demurrer to the indictment, and the state appealed.

The indictment is very lengthy, and it would unduly
lengthen the opinion to set it out.  It set up in ·great
detail the fact that appellee had entered into an arrange-
ment with the St. Joseph Cattle Loan Company, a cor-
poration of St. Joseph, Mo., by which appellee was to pur-
chase cattle in Eddy county, N. M., and was to mortgage
the cattle to the corporation named, and was to draw on
the corporation for the money necessary to finance the
purchase, attaching to the draft the bill of sale to appel-
lee for the cattle, the mortgage on the cattle executed by
appellee to the corporation, and a promisory note for a
like amount secured by the mortgage.  The indictment
alleged that appellee entered into an arrangement with
one D. W. Smoot, as a dummy, by which Smoot was to
execute to appellee a bill of sale for 126 head of cattle,
Smoot owning no cattle, and that appellee prepared and
executed a chattel mortgage on the same fictitious cattle
and a note, and then proceeds:

"The said Willam Faggard, on the 15th day of October, in
the year 1917, at the county of Eddy and in the state of New
Mexico, unlawfully, feloniously, and designedly devising to
cheat and defraud St. Joseph Cattle Loan Company, a cor-
poration aforesaid, did then and there unlawfully,ʼ falsely,
designedly, and feloniously pretend to St. Joseph Cattle Loan
Company, a corporation aforesaid, by virtue of one false and
bogus bill of sale, signed and executed by D. W. Smoot as
aforesaid, and delivered to William Faggard, as aforesaid,
pretending to transfer title and ownership to 126 head of two
year old steers from D. W. Smoot to William Faggard as
aforesaid, together with a false and bogus draft in the
amount of $5,670, drawn by D. W. Smoot aforesaid on
St. Joseph Cattle Loan Company, a corporation, aforesaid,
and attached to the said false and bogus bill of sale aforesaid;

that he, the said William Faggard, was the owner of and in the possession of the said 126 head of two year old steers aforesaid, and the said William Faggard did then and there execute in favor of and deliver to St. Joseph Cattle Loan Company, a corporation aforesaid, a certain false and bogus chattel mortgage on said 126 head of two year old steers aforesaid, by means of which false pretenses and false and bogus bill of sale and draft attached thereto as aforesaid, and drawn on St. Joseph Cattle Loan Company, a corporation as aforesaid, at and through the State National Bank of Carlsbad, a corporation, and together and by means of said false and bogus chattel mortgage as aforesaid, he, the said William Faggard, did then and there unlawfully, falsely, fraudulently, designedly, feloniously, and with intent then and there to cheat and defraud the St. Joseph Cattle Loan Company, a corporation, the said William Faggard caused the said draft in the sum of $5,670 to be drawn as aforesaid, and the said sum of $5,670 to be deposited in the name of D. W. Smoot aforesaid, to the account of D. W. Smoot aforesaid with the State National Bank of Carlsbad, a corporation, and thereafter he, the said William Faggard, devising to cheat and defraud as aforesaid, feloniously, unlawfully, designedly, and fraudulently, procured the said D. W. Smoot aforesaid to sign his name to certain blank checks given on the State National Bank of Carlsbad, a corporation aforesaid, and by reason of said blank checks, signed in blank by D. W. Smoot as aforesaid, the said William Faggard, by himself and through his agents and instrumentality, did obtain from the said St. Joseph Cattle Loan Company, a corporation, of the goods, chattels, moneys, and property of the said St. Joseph Cattle Loan Company, a corporation, the sum of $5,670, lawful money of the United States of America."

The demurrer to the indictment contained several grounds, the first being that, if any offense of obtaining money for false pretenses had been committed, the same was committed at St. Joseph, in the State of Missouri, and not within the state of New Mexico, and that the district court of Eddy county had no jurisdiction to try it. Another ground was that the indictment failed to allege the essential elements of the crime attempted to be charged with such a degree of certainty that the defendant might be apprised of that with which he was charged, and that beginning at line 18 of the second page of said indictment it is charged that the defendant caused a draft to be drawn on the St. Joseph Cattle Loan Company, and caused a certain sum of money to be deposited in the name of one Smoot; but it nowhere appears by whom such deposit was made, nor is it al-

leged in said indictment that the person, firm, or cor-
poration had received any communication of a bogus
draft or bill of sale, or any other false pretense, and
thereby relied upon the same in 'parting. with the
money so deposited, all of which said allegations are
essential to a valid indictment.    The court sustained
the demurrer generally, but in this court both.appellant
and appellee assumed that the demurrer was sustained
because the indictment failed to show that the venue was
in Eddy county, and this is the only question argued
in either brief.

[1]    Both parties concede that the venue of the
crime depended upon where the defrauded party parted
with his money.    In other words, if the St. Joseph
Cattle Loan Company parted with its money in Eddy
county, then the venue was properly laid in that county;
on the other hand, if the money was parted with ·in St.
Joseph, Mo., then the venue was there.    The law is that
a crime must be prosecuted in the jurisdiction where it
is committed, and a prosecution for criminal false pre-
tenses must be had in the county, district, or state where
the offense was consummated by the obtaining of the
property, even though the inducing pretenses were made
elsewhere, and the consummation by delivery of the
property was effected through the instrumentality of
an innocent agent, without the personal presence of the
principal.    11 R. C. L. p. 854.

[2]    Appellee argues that the indictment shows that
the money was obtained by means of a draft drawn on
the St. Joseph Cattle Loan Company, and necessarily it
would be paid at St. Joseph, Mo.    The state contends
that the indictment does not show that the draft was
ever sent through St. Joseph, Mo., and there paid; that
so far as appears on the face of the indictment the cor-
poration might have parted with its money in Eddy
county; that it may have had an agent in that county,
who took up the draft at the local bank.    We are in-
clined to agree with the state in this contention, but the
indictment is fatally defective for another reason, and

therefore we are compelled to hold that the court properly sustained the demurrer.

The defect in the indictment exists by reason of the failure of the state to allege and show that the money deposited in the bank at Carlsbad was the money or property of the St. Joseph Cattle Loan Company, alleged to have been defrauded. The indictment, after showing the false pretenses and the drawing of the draft, says:

"The said William Faggard caused the said draft in the sum of $5,670 to be drawn as aforesaid, and the said sum of $5,670 to be deposited in the name of D. W. Smoot aforesaid, to the account of D. W. Smoot aforesaid, with the State National Bank of Carlsbad."

But it fails to allege that the money so deposited was the property of the St. Joseph Cattle Loan Company. So far as appears, Faggard himself might have deposited the money, or it might have been deposited to Smoot's credit by the State National Bank of Carlsbad. In the indictment it is alleged that Faggard induced Smoot to sign checks in blank, and that he filled out such checks for the amount of money theretofore alleged to have been deposited to Smoot's credit in the bank, and cashed the checks and obtained the money so deposited, and that by so doing, "by himself and through his agents and instrumentality, did obtain from the said St. Joseph Cattle Loan Company," etc., "the sum of $5,670." The indictment wholly fails to show the connection between the false pretenses, the drawing of the draft, the deposit of the money in the Carlsbad Bank, the obtaining of the same by Faggard, and the defrauding thereby of the St. Joseph Cattle Loan Company.

[3] Where we should have light upon an essential fact, i. e., the ownership of the money deposited in the bank at Carlsbad to the credit of Smoot, the indictment is silent. So far as appears in the indictment before us, the draft may never have been delivered to or accepted

by the injured party. In the case of Lutton v. State, 14 Tex. App. 518, it was held that the failure to allege, in an indictment for swindling by means of a bogus draft, that the draft was delivered to or accepted by the injured party as the consideration upon which the money was advanced, vitiated the indictment. The majority rule in the United States is to the effect that, in the absence of statute, an indictment for obtaining property by false pretenses must allege, directly and distinctly, the ownership of the property obtained; and the territorial Supreme Court, in the case of Territory v. Hubbell, 13 N. M. 579, 86 Pac. 747, 13 Ann. Cas. 848, adopted this rule. Many cases will be found cited in the note to this case. Unless the money deposited in the Carlsbad bank was the money or property of the St. Joseph Cattle Loan Company, the company could not have been defrauded by Smoot signing the blank checks by means of which appellee obtained the money from the Carlsbad bank; and unless it was the money of the cattle company, there would be no connection between the false pretenses and the procuring of the money on the checks in question. Had the indictment set forth the facts as to the securing of the money from the St. Joseph Cattle Loan Company on the drafts, it would have shown upon its face whether the money was parted with by the company at St. Joseph, Mo., or in Eddy county, N. M.; but it wholly fails to show that the St. Joseph Cattle Loan Company ever parted with any money upon the draft.

For the reasons stated, the judgment will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.